**CHARLES A. BONNER, ESQ. SB# 85413**
**A. CABRAL BONNER, ESQ. SB# 247528**
**LAW OFFICES OF BONNER & BONNER**
475 GATE FIVE RD, SUITE 212
SAUSALITO, CA 94965
TEL: (415) 331-3070
FAX: (415) 331-2738
cbonner799@aol.com
cabral@bonnerlaw.com

ATTORNEYS FOR PLAINTIFFS

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| STEVEN LAWSON and DARLA LAWSON, other similar situated individuals,<br><br>Plaintiffs,<br><br>vs.<br><br>GENERAL ELECTRIC COMPANY, and DOES 1-200,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES**<br>1. NEGLIGENCE<br>2. STRICT LIABILITY FOR ULTRA HAZARDOUS ACTIVITY<br>3. STRICT LIABILITY FOR DESIGN DEFECT<br>4. PREMISES LIABILITY<br>5. NEGLIGENCE PER SE<br>6. LOSS OF CONSORTIUM<br><br>**JURY TRIAL DEMANDED** |

STEVEN LAWSON and DARLA LAWSON, by their attorney, CHARLES A. BONNER ESQ., respectfully allege, upon information and belief, on behalf of themselves and others similarly situated, as follows:

### JURISDICTION AND VENUE

1. The jurisdiction of this Court over the subject matter in this action is based upon Diversity Jurisdiction, 28 U.S.C. §1332. The amount in controversy exceeds $75,000, exclusive of interest and costs. Similarly, jurisdiction exists under the Price-Anderson Act, 42 U.S.C. §§ 2011-2297.[1] This Court has personal jurisdiction over Plaintiff because Plaintiff submits to the

---
[1] Price-Anderson Act provides federal jurisdiction over lawsuits for injuries arising out of a "nuclear incident." Under such "public liability actions," the "substantive rules for decision ... shall be derived from the law of the State

COMPLAINT FOR DAMAGES [1]

Court's jurisdiction. This Court has personal jurisdiction over Defendants because they conduct substantial business in this District, some of the actions giving rise to the Complaint took place in this District and some of Plaintiff's claims arise out of Defendants operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state; committing negligence and a tortious act in this state; and causing injury to person and property in this state arising out of Defendants' acts and omissions outside this state and at or about the time of such injuries, Defendants were engaged in solicitation or service activities within this state or products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to these claims occurred in this District, the Defendants have caused harm to Plaintiffs in this District and the Defendants are residents of this District under 28 U.S.C. § 1391(c)(2) because they are subject to personal jurisdiction in this District.

## PARTIES

2. Plaintiff, STEVEN LAWSON ("Mr. Lawson" or "Plaintiff") is a citizen of the United States of America and is a resident of Nampa, Idaho. At all relevant times, Mr. Lawson was a welding technician who provided welding and other technical support for Defendant, GENERAL ELECTRIC's nuclear power plants and other facilities.

3. Plaintiff, DARLA LAWSON ("Mrs. Lawson" or "Plaintiff Mrs. Lawson") is a citizen of the United States of America and is a resident of Nampa, Idaho. At all relevant times, Mrs. Lawson was the spouse of Plaintiff Steven Lawson.

4. DEFENDANT GENERAL ELECTRIC, ('G. E.") at all times herein mentioned, was and is a for-profit corporation, organized and existing under the laws of the United States of America, with its principal place of business and Corporate Headquarters located at General Electric Company 3135 Easton Turnpike Fairfield, CT 06828.

---

in which the nuclear incident involved occurs, unless such law is inconsistent with the provisions of [section 2210]." 42 U.S.C. ß 2014(hh). A "nuclear incident" includes "any occurrence ...within the United States causing ...[any] sickness, disease, or death ...resulting from the radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or by-product material." 42 U.S.C. ß 2014(q).

5. General Electric (GE) is an American multinational conglomerate corporation incorporated in New York. The company operates through the following segments: Energy, Technology Infrastructure, Capital Finance as well as Consumer and Industrial.

## DOE DEFENDANTS

6. Plaintiffs do not know the true names and capacities, whether individual, corporate, associate, or otherwise of DEFENDANT Does 1 through 200 inclusive, and therefore sue these Defendants by such fictitious names. Plaintiffs will amend their complaint to allege their true names and capacities when this has been ascertained.

## STATUTE OF LIMITATIONS

7. Within all the relevant statutes of limitation periods, Mr. Lawson has discovered the facts pertaining to the nature and extent of his injuries. Within all the relevant statutes of limitation periods, Mr. Lawson has discovered the facts which prove that GENERAL ELECTRIC, and/or DEFENDANT DOES 1 through 200, each of them, are the actual and proximate cause of his injuries, damages and harm. Specifically, on or about February 11, 2015, Mr. Lawson discovered that had been injured by exposure to high doses of radiation. He learned this through a diagnosis from his doctors of "brain degeneration with dementia", in which his doctors noted: "He has a history of exposure to high doses of nuclear radiation on multiple occasions during his career, which lasted longer than 10 years….his current neurological condition is more likely than not, to a medical probability, a result of cumulative radiation exposure to his entire body." This delayed discovery tolls, both in equity and in law, the expiration of the statutes of limitation.

## RESPONDEAT SUPERIOR

8. All of the described conduct, acts, and failures to act herein are attributed to agents and managing agents of GENERAL ELECTRIC and Does 1 through 200. Said acts, conduct and failures to act were within the scope of such agency and employment. At all times relevant herein, each participant was acting within the course and scope of his or her employment and agency.

## STATEMENT OF FACTS

9. Throughout a time period in excess of 12 years, Plaintiff, Mr. Lawson worked as a contracting welding technician for Defendant, GENERAL ELECTRIC on its boiling water nuclear ("BWR") power plants, both domestically in the United States and abroad

internationally. Mr. LAWSON was an employee of Dimetrics Incorporated which contracted with DEFENDANT GENERAL ELECTRIC to have Mr. Lawson and other welders provide welding services on GENERAL ELECTRIC'S nuclear power plants through the United States, including California, New York, Vermont and internationally, including Spain. At all relevant times, Mr. LAWSON worked as an ASME SECTION 9 N STAMP WELDER under a GENERAL ELECTRIC contract. This certification verifies that Mr. LAWSON was an authorized worker at GENERAL ELECTRIC nuclear power plants.

10. On each occasion, GENERAL ELECTRIC failed to provide Mr. Lawson with adequate safety measures to protect him from the highly hazardous radioactive materials pervasive throughout the reactors.

11. On several occasions, Mr. Lawson was subjected to working inside GENERAL ELECTRIC's power plants' piping systems, with the existence therein of highly radioactive, standing water. Such occurrences were in direct violation of safety protocols requiring that such piping systems be absolutely dry and free of radioactive water prior to any undertaking of remediation or repair.

12. On these occasions, Mr. Lawson's exposure to radiation exceeded permissible exposure levels, resulting in his having to be "scrubbed down" and removed from the job site.

13. In spite of repeated exposures, GENERAL ELECTRIC required Mr. Lawson to return to work and complete his welding repair assignments while knowing that his repeated exposures exceeded an amount that would have barred him from receiving any additional radiation exposure, including low medical x-rays.

14. With full knowledge that Mr. Lawson had repeatedly been exposed to radiation far in excess of the permissible levels while working for and on GENERAL ELECTRIC nuclear reactors, GENERAL ELECTRIC continually contracted with and sent Mr. Lawson to work on its other nuclear reactors. In so doing, GENERAL ELECTRIC disregarded the extent and severity of radiation exposures previously incurred by Mr. Lawson.

15. Despite medical and scientific documentation to the contrary, GENERAL ELECTRIC, through mandatory informative meetings, informed Mr. Lawson, as well as other contracted workers, that G. E. could not apprise him/them of the long-term health effects of repeated radioactive exposure.

16. Among the various welding repairs required and undertaken by Mr. Lawson

on GENERAL ELECTRIC reactors, were replacement welds in the cooling units of GENERAL ELECTRIC's nuclear reactors.

17. In designing and assembling its boiling water nuclear reactor ("BWR") cooling units, GENERAL ELECTRIC improperly welded the stainless steel housing of the reactor's cooling unit to the carbon steel reactor which, due to compositional incongruities between stainless and carbon steel, caused the seal between these two vitally important components to rupture and fail.

18. This design fault required Mr. Lawson to enter the highly radioactive, contaminated cooling system in order to grind out GENERAL ELECTRIC's faulty #316 welds and replace them with the proper Inconel coupling and #316L welds in order to correctly attach the stainless steel cooling unit and the carbon steel reactor.

19. GENERAL ELECTRIC designed its Boiling Water Reactors ("BWR") and its equipment, including nozzles and piping. Mr. Lawson was contaminated with radiation while working on GENERAL ELECTRIC's BWR in various states in the United Sates, including Nebraska, New York, California, and other locations. All of GENERAL ELECTRIC's BWRs are similarly designed but are constructed with different dimensions and under different restrictions. Mr. Lawson's duties required that he receive and handle piping that had been machined by co-workers and whose purpose was to retrofit installations. Mr. Lawson and his crew would undertake the retrofit by welding these newly machined pipes inside the reactors as replacements for defective and leaking piping. The defective and leaking piping would rupture and displace radioactive water into the reactor turbines which otherwise subjected them to contamination. GE required Mr. Lawson on several occasions to repair leaking defective pipes while working directly in radioactive contaminated water. On some occasions, GE required Mr. Lawson to work underneath the reactor, making welds off the bottom "head drain".

20. GE required Mr. Lawson to crawl inside the reactor's removed pipes in order to affix and retrofit new pipes by hand. Often, Mr. Lawson was lying on his back or side, with his head right up next to the reactors. Although Mr. Lawson and coworkers used lead shielding or lead blankets (similar to those encountered at a dentist office) to protect themselves, the dosage exposure rates were far in excess of 5 Rem (5000 Millirem (MR)), and sometimes as high 10,000 40,000 MR while inside the reactor piping.

COMPLAINT FOR DAMAGES [5]

21. At all relevant times, GE knew and was informed, that Mr. Lawson, and other similarly situated contractors, were working on GE's BWR reactors, which were releasing extremely dangerous levels of radiation. At all relevant times, GE knew and was informed, that Mr. Lawson and other similarly situated contractors were exposed to unsafe and hazardous levels of radiation. GE negligently and intentionally failed to make its premises safe; failed to insure proper and safe working conditions, and failed to provide Mr. Lawson, and other similarly situated contractors with proper protective clothing, gear and equipment for their head, body, and extremities.

22. GE, a licensee of the Nuclear Regulatory Commission, negligently and intentionally violated the NRC's radiation exposure safety guidelines by failing to adhere to the NRC mandate that "a licensee shall control the occupational dose to individual adults". [2] GE permitted, encouraged, maintained and engaged in a deceptive accounting of the "Occupational dose limits for adults". GE knowingly and intentionally permitted Mr. Lawson, and other similarly situated contractor workers, to be exposed to dangerously, high health hazard levels of radiation that exceeded as much as two times the safe level of 5 Rem (5000 MR) established by the NRA. For example, Mr. Lawson and other similarly situated contractor workers would start and finish repairing a GE BWR three (3) or four (4) months prior to the end of the calendar year and as such, accumulate doses of 4900 millirem of radiation, which was just shy of the allowable limit of 5 Rem (5000 MR). On the first of January of the next year, Mr. Lawson and coworkers would be dispatched to begin and complete a repair on another GE BWR, and thus, accumulate a second 4900 millirem dose of radiation for a total of 9800 millirem or 9.8 Rem, almost double the permissible occupational dose for an individual adult in a twelve month period.

23. GE knowingly and intentionally permitted Mr. Lawson, and other similarly situated contractor workers, to be exposed to doses ranging from 6-8 Rem (6000-7000 MR) in a 6-7 month period of time by relying on this deceptive measuring of exposure. GE knowingly exposed Mr. Lawson and co-workers to the otherwise legal limit of 4200, 4300, 4400 millirem and then on January 1 of the next year, deceptively assert that exposure levels would reset to zero and then send Mr. Lawson and others out to be exposed to another radioactive dose just shy of the permissible 5 Rem (5000 MR). This practice resulted in Mr. Lawson receiving twice the

---

[2] § 20.1201 Occupational dose limits for adults.

permissible dosage in a six-month period. This was a deceptive business practice that directly hurt Mr. Lawson, causing his present damages and harms, including, but not limited to, his degenerating brain damage.

24. GE failed to warn or discuss with Mr. Lawson or his coworkers, the health effects of the accumulation of high doses of radiation exposure during a sequential 5 or 6-year period, and how such "stacking up" of high dosage rates negatively impacted their health. GE knowingly and intentionally permitted Mr. Lawson, and other similar situated contractor workers, to be exposed to radiation releases resulting in internal and external radiation contamination, including radioisotope Cobalt 60 contamination. Internal and external radiation contamination occurred with such frequency during the repair of GE's BWRs, that workers referred to it as being "Crapped- Up". GE permitted, encouraged and engaged in practices that required Mr. Lawson, and co-workers to be "Crapped-Up" with contamination of Cobalt 60 and other radioactive materials such that they were forced to use soap and water and scrub and brush off the contaminants and return to work in the same radiation "Hot Spots".

25. GE knowingly and intentionally permitted Mr. Lawson and other similar situated contractor workers to be exposed to radiation releases resulting in extreme high dose rates far in excess of legal safe limits to his extremities and his head. Mr. Lawson was exposed to higher dose rates to his head and extremities because GE failed to provide any protective gear for the head, upper body and extremities. There was no cover for the upper body including his head because GE failed to provide such protective gear and failed to warn of the long-term health effects of repeated exposure.

26. One of the many radioactive isotopes Mr. Lawson and others similarly situated were frequently exposed to in excess of the legal limits, was Cobalt-60. Cobalt-60 is a synthetic radioactive isotope with a half-life of 5.2714 years.[3] It is produced artificially in nuclear reactors. Measurable quantities are also produced as a by-product of typical nuclear power plant operation and may be detected externally when leaks occur. The health effects of Cobalt-60 after entering a living mammal, such as a human being, are to damage and/or kill the cells. While some Cobalt-60 is dissipated from the body, the remainder is taken up by tissues, mainly the

---

[3] Half-life is the amount of time required for the amount of something to fall to half its initial value.

liver, kidneys, brain and bones, where the prolonged exposure to gamma radiation can cause cancer and other degenerating conditions such as brain degeneration, as Mr. Lawson is suffering.

27. As a result of GENERAL ELECTRIC's failure to take precautionary measures to ensure the safety of contractors like Mr. Lawson, who was contracted to undertake repairs on its defectively designed and manufactured nuclear BWRs, G. E. subjected him to an immensely higher risk of radiation exposure. Mr. Lawson has been afflicted with and continues to suffer from "brain degeneration with dementia". These illnesses suffered by Mr. Lawson are a direct and undisputed consequence of his being repeatedly exposed to radioactivity without which, and but for GENERAL ELECTRIC's failure to provide for his safety, Mr. Lawson would not be suffering from the ailments he is currently suffering and without which he would be able to enjoy his well-deserved retirement with his friends and family.

## **FIRST CAUSE OF ACTION**
### **(Negligence)**
### **(Against General Electric)**

28. Mr. Lawson hereby incorporates the allegations contained in the preceding paragraphs, as though fully set forth herein.

29. California Code of Civil Procedure, Section 1714 provides, in pertinent part, the following: "Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself."

30. Similarly, GENERAL ELECTRIC had a duty to protect Mr. Lawson from incurring radioactive exposure beyond 5 Rem (5000 MR) of radiation annually, as determined by the Nuclear Regulatory Commission. 10 C.F.R. § 20.1201(a)(1).

31. At all times herein mentioned, it was the duty of GENERAL ELECTRIC's servants, agents and/or employees to maintain, manage and control its nuclear reactors in a reasonably safe and suitable condition, and to provide contractors, like Mr. Lawson, who were contracted to undertake remediation and repair, with reasonably safe work environments and safety protocols to account for the on-site existence of ultra-hazardous radioactive materials.

32. At all relevant times herein, GENERAL ELECTRIC knowingly and negligently caused, permitted and allowed Mr. Lawson to engage in his welding and metallurgic duties without providing him with proper safety instructions, precautions, and equipment. Additionally, although knowing that Mr. Lawson had been exposed to radiation far in excess of the amounts permissible, GENERAL ELECTRIC required Mr. Lawson to continue working on its nuclear power plants with full knowledge that he had cumulatively been exposed to excessive and harmful levels of radiation.

33. GENERAL ELECTRIC effectively exposed Mr. Lawson to over 5 Rem (5000 MR) of radiation annually which exceeded the occupational dose limit for nuclear energy workers as determined by the Nuclear Regulatory Commission. 10 C.F.R. § 20.1201(a)(1). By allowing for such excessive exposure, GENERAL ELECTRIC further breached its duty of care to Mr. Lawson who, as a contract worker who singularly provided his welding services to GENERAL ELECTRIC, reasonably relied upon GENERAL ELECTRIC's due care for his safety and well being.

34. GENERAL ELECTRIC controlled all of the activities at its nuclear power plants, and therefore is responsible for increasing the release of radiation above the 5 Rem (5000 MR) safe levels of radiation exposure, and for causing Mr. Lawson's accumulation of excessive doses of radiation exposure. Hence, General Electric is responsible for causing the damages alleged in this Complaint. GENERAL ELECTRIC knew or, in the exercise of due care, should have known, that Mr. Lawson, as well as other contractors working on GENERAL ELECTRIC's nuclear reactors, would be directly and harmfully impacted by GENERAL ELECTRIC's negligent conduct.

35. At all relevant times GENERAL ELECTRIC was aware that exposure to radiation creates severe danger to contractors' health and was also aware of the importance of accurately monitoring and registering radioactive levels in its power plants.

36. Nuclear radiation is a known human carcinogen that is linked to many human health problems. The U.S. Environmental Agency ("EPA") classifies it as a human carcinogen.

37. As a direct and proximate result of the wrongful acts and negligence of GENERAL ELECTRIC that resulted in radiation exposure beyond the limits set out in 10 C.F.R. § 20.1201(a)(1), Mr. Lawson suffered damages as alleged herein. Mr. Lawson must now endure

the life-ending aftermath of severe and cumulative radiation poisoning and the suffering which, had GENERAL ELECTRIC exercised its duty of care, could have been avoided.

38. Upon information and belief, as a further direct and proximate result of GENERAL ELECTRIC's negligence, Mr. Lawson has been and will be required to undergo further medical testing, evaluation and medical procedures, including but not limited to, treatment to stop or slow the progression of his brain degeneration and efforts to seek a cure, and will be required to employ extraordinary means to achieve a cure.

39. As a further direct and proximate result of GENERAL ELECTRIC's negligence, Mr. Lawson has incurred losses and damages for personal injury, loss of use and enjoyment of life, the need for periodic medical examination and treatment, and economic losses, including the expenditure of time and money, and will continue to incur losses and damages in the future.

40. Mr. Lawson also faces additional and irreparable harm to his life expectancy which has been shortened and cannot be restored to its prior condition.

41. GENERAL ELECTRIC's conduct was willful, wanton, reckless, malicious and/or exhibited a gross indifference to, and a callous disregard for human life, safety and the rights of others, and more particularly, the rights, life and safety of Mr. Lawson; and was motivated by consideration of profit, financial advantage, monetary gain, economic aggrandizement and/or cost avoidance, to the virtual exclusion of all other considerations.

42. Due to GENERAL ELECTRIC's negligence, Mr. Lawson is entitled to compensatory damages in a sum to be determined by the jury, plus punitive damages in a sum equal to treble the damages determined to be adequate by the jury.

Wherefore, Mr. Lawson requests relief as hereinafter provided.

**SECOND CAUSE OF ACTION**
**Strict Liability for Ultra hazardous Activities**
**(Against General Electric)**

43. Mr. Lawson hereby incorporates the allegations contained in the preceding paragraphs, as though fully set forth herein.

44. By relying on ultra-hazardous radioactive material as the source with which to produce electricity, the operation of a nuclear reactor is undeniably an ultra hazardous activity.

45. Said activity caused Mr. Lawson harm, damages, losses, injuries, including medical bills, loss of enjoyment of life, fear, anxiety, mental and emotional distress and other economic and non-economic damages.

46. GENERAL ELECTRIC is thereby strictly responsible and liable for Mr. Lawson's harms, injuries, and damages (both economic and non-economic), by negligently and recklessly engaging in the production of nuclear power, which is a well-established ultra-hazardous activity.

47. Mr. Lawson's injuries, damages, losses and harm are the kind of harm that would necessarily be anticipated as a result of the risk created by GENERAL ELECTRIC's willful exposure of Mr. Lawson to harmful levels of radiation.

48. GENERAL ELECTRIC's acts proximately caused harm and damage to Mr. Lawson, including personal injury, loss of enjoyment of his life, the need for periodic examination and treatment, as well as economic losses including the cost of obtaining a potential cure, and other needless expenditures of time and money. Mr. Lawson will continue to incur losses and damage in the future

49. GENERAL ELECTRIC intended to cause or acted with conscious disregard of the probability of causing injury to Mr. Lawson, and therefore, is liable for punitive damages.

Wherefore, Mr. Lawson requests relief as hereinafter provided.

### THIRD CAUSE OF ACTION
### (Strict Liability Manufacturing and Design Defect)
### (Against General Electric)

50. Mr. Lawson hereby incorporates the allegations contained in the preceding paragraphs, as though fully set forth herein.

51. GENERAL ELECTRIC manufactured, distributed, and sold the subject defective Boiling Water Reactors ("BWRs"), an unreasonably dangerous product.

52. GENERAL ELECTRIC had a duty of due care to design and manufacture reasonably safe Nuclear Power boiling water reactors.

53. GENERAL ELECTRIC had a duty of care to test its nuclear reactors, particularly the vitally important interface between the carbon steel reactor and the stainless steel cooling system in order to determine the risks posed to all persons, including contracted workers like Mr. Lawson.

54. GENERAL ELECTRIC had a duty not to put on the market, or engaged the use of an unsafe and defectively designed product that posed a serious danger to all persons within its vicinity, including those, like Mr. Lawson, who would invariably be called upon to make repairs and retrofits on the reactors.

56. GENERAL ELECTRIC breached said duties of due care when they manufactured a defectively designed product, namely BWRs, with actual or constructive knowledge of the defects. Due to the design and manufacturing defects, the reactors were not reasonably safe and protective of the environment generally and specifically for those called upon to make repairs, including Mr. Lawson.

57. The defective design of GENERAL ELECTRIC's nuclear reactors, as alleged herein, actually and proximately caused reasonably foreseeable damages to Mr. Lawson.

58. GENERAL ELECTRIC's conduct in the design, manufacture, and maintenance of its boiling water reactors, a defective or unreasonably dangerous product, makes GENERAL ELECTRIC strictly liable to Mr. Lawson.

Wherefore, Mr. Lawson requests relief as hereinafter provided.

## FOURTH CAUSE OF ACTION
### Premises Liability
### (Against General Electric)

59. Mr. Lawson hereby incorporates the allegations contained in the preceding paragraphs, as though fully set forth herein.

60. California Code of Civil Procedure, Section 1714 provides, in pertinent part, the following: "Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person…"

61. GE breached its legally imposed duty by negligently failing to use ordinary care in the management, design, maintenance, and manufacturing of its property at its various BWR nuclear power plants through the United States. GE's negligence caused massive releases of radiation and radioactive materials resulting in permanent, life-threatening injury to Mr. Lawson.

62. GENERAL ELECTRIC's conduct in the design, manufacture, use, engagement, management and maintenance of its boiling water reactors, a defective and/or unreasonably dangerous product, makes GENERAL ELECTRIC strictly liable to Mr. Lawson.

COMPLAINT FOR DAMAGES [12]

Wherefore, Mr. Lawson requests relief as hereinafter provided.

### FIFTH CAUSE OF ACTION
### Negligence Per Se
### (Violation of NRC Regulations)

63. Mr. Lawson hereby incorporates the allegations contained in the preceding paragraphs as though fully set forth herein.

64. GE violated NRC Regulations Title 10, Code of Federal Regulations, including: § 20.1502: "Conditions requiring individual monitoring of external and internal occupational dose. Each licensee shall monitor exposures to radiation and radioactive material at levels sufficient to demonstrate compliance with the occupational dose limits of this part. As a minimum—(a) Each licensee shall monitor occupational exposure to radiation from licensed and unlicensed radiation sources under the control of the licensee and shall supply and require the use of individual monitoring devices by—(1) Adults likely to receive, in 1 year from sources external to the body, a dose in excess of 10 percent of the limits in § 20.1201(a),

A.) § 20.1601 Control of access to high radiation areas. (a) The licensee shall ensure that each entrance or access point to a high radiation area has one or more of the following features-- (1) A control device that, upon entry into the area, causes the level of radiation to be reduced below that level at which an individual might receive a deep-dose equivalent of 0.1 rem (1 mSv) in 1 hour at 30 centimeters from the radiation source or from any surface that the radiation penetrates; (2) A control device that energizes a conspicuous visible or audible alarm signal so that the individual entering the high radiation area and the supervisor of the activity are made aware of the entry;

B.) § 20.1201 Occupational dose limits for adults, providing, in pertinent part, the following: (a) The licensee shall control the occupational dose to individual adults, except for planned special exposures under § 20.1206, to the following dose limits. (1) An annual limit, which is the more limiting of-- (i) The total effective dose equivalent being equal to 5 rems (0.05 Sv); or (ii) The sum of the deep-dose equivalent and the committed dose equivalent to any individual organ or tissue other than the lens of the eye being equal to 50 rems (0.5 Sv). (2) The annual limits to the lens of the eye, to the skin of the whole body, and to the skin of the extremities, which are: (i) A lens dose equivalent of 15 rems (0.15 Sv), and

(ii) A shallow-dose equivalent of 50 rem (0.5 Sv) to the skin of the whole body or to the skin of any extremity. (b) Doses received in excess of the annual limits, including doses received during accidents, emergencies, and planned special exposures, must be subtracted from the limits for planned special exposures that the individual may receive during the current year (see § 20.1206(e)(1)) and during the individual's lifetime (see § 20.1206(e)(2)).

65. Defendant GE violated § 20.1502 by failing to "monitor occupational exposure to radiation" during the repairs of its BWR, and failing to "supply and require the use of individual monitoring devices" by Mr. Lawson and similarly contractor workers, who were "likely to receive, [and did receive] in 1 year from sources external to the body, a dose in excess of 10 percent of the limits in § 20.1201(a)" of 5 rems. On information and belief, Defendant GE did not supply nor require the use of any, or a reasonably appropriate, individual monitoring devices for determining the exposure levels to the upper-body, extremities and the head of Mr. Lawson and his coworkers.

66. Defendant GE violated § 20.1601 by failing to provide at each of the BWR repair locations (1) A control device that, upon entry into the area, causes the level of radiation to be reduced below that level at which an individual might receive a deep-dose equivalent of 0.1 rem (1 mSv) in 1 hour at 30 centimeters from the radiation source or from any surface that the radiation penetrates. Defendant GE violated § 20.1601 by failing to provide (2) A control device that energizes a conspicuous visible or audible alarm signal so that the individual entering the high radiation area and the supervisor of the activity are made aware of the entry. Mr. Lawson and coworkers were working in areas with very high radiation releases, without any devices emitting an "audible alarm", signaling high radiation releases.

67. Defendant GE violated § 20.1201 by engaging in an unreasonably deceptive scheme to determine the occupational dose to which Mr. Lawson and those similarly situated were exposed, and a failed to " control the occupational dose: to "[a]n annual limit, which is the more limiting of--(i) The total effective dose equivalent being equal to 5 rems (0.05 Sv)…."

68. The Purpose of NRC Regulations Title 10, Code of Federal Regulations is to "(a)…establish standards for protection against ionizing radiation resulting from activities conducted under licenses issued by the Nuclear Regulatory Commission.) (b) It is the purpose of the regulations in this part to control the receipt, possession, use, transfer, and disposal of licensed material by any licensee in such a manner that the total dose to an individual (including

doses resulting from licensed and unlicensed radioactive material and from radiation sources other than background radiation) does not exceed the standards for protection against radiation prescribed in the regulations in this part. However, nothing in this part shall be construed as limiting actions that may be necessary to protect health and safety. § 20.1001"

69. Mr. Lawson is in the class of "individual[s]" for whom the NRC Regulation seek to protect by its purpose "…to control the receipt, possession, use, transfer, and disposal of licensed material by any licensee in such a manner that the total dose to an individual (including doses resulting from licensed and unlicensed radioactive material and from radiation sources other than background radiation) does not exceed the standards for protection against radiation. Since Defendant GE violated this Regulation by failing to control the receipt of radiation releases to Mr. Lawson, which exceeded "the standards for protection against radiation" of 5 rems, Defendant GE is negligent per se, entitling Mr. Lawson to all economic and non-economic damages.

Wherefore, Mr. Lawson requests relief as hereinafter provided.

### SIXTH CAUSE OF ACTION
### (Loss of Consortium)
### (Against General Electric)

70. Plaintiffs hereby incorporate the allegations contained in the preceding paragraphs, as though fully set forth herein.

71. Plaintiff Darla Lawson, Mr. Lawson's spouse, herein alleges that she has been harmed by the injury to her husband. Therefore, Mrs. Darla Lawson seeks to be reasonably compensated for the loss of her husband's companionship, financial support and services, past and future, including the loss of love, companionship, comfort, care, assistance, protection, affection, society, moral support; and the loss of the enjoyment of sexual relations.

### PRAYER FOR RELIEF

1. For a judgment ordering, requiring and compelling GENERAL ELECTRIC to take full responsibility and liability for all of Plaintiffs' damages, economic and non-economic.

2. For special and economic damages, including lost wages, for all Causes of Action;

3. For general and non-economic damages for all Causes of Action;

COMPLAINT FOR DAMAGES [15]

4. For punitive damages for all Causes of Action;

5. For prejudgment interest at the prevailing legal rate;

6. For costs of the suit including reasonable attorneys' fees; and

7. For such other and further relief, including injunctive relief, as the Court may deem proper.

**Dated: May 28, 2015**

**RESPECTFULLY SUBMITTED,**

**LAW OFFICES OF BONNER & BONNER**

By: */S/CHARLES A. BONNER*
CHARLES A. BONNER
Attorney for Plaintiffs

**DEMAND FOR JURY TRIAL**

PLAINTIFFS hereby demand a jury trial of all issues as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

**Dated: May 28, 2015**

**RESPECTFULLY SUBMITTED,**

**LAW OFFICES OF BONNER & BONNER**

By: */S/CHARLES A. BONNER*
CHARLES A. BONNER
Attorney for Plaintiffs
