# THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| STEVE LAWSON and DARLA LAWSON, other similar situated individuals, <br><br> Plaintiffs, <br><br> vs. <br><br> GENERAL ELECTRIC, and DOES 1-200, <br><br> Defendants. | Case No.: 16-cv-04299 <br><br> Honorable Charles R. Norgle <br><br> Magistrate Judge Mary M. Rowland |

# PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT GENERAL ELECTRIC COMPANY'S MOTION TO EXCLUDE TESTIMONY OF MR. ARNOLD GUNDERSEN UNDER *DAUBERT* AND RULE 702

# Table of Contents

A. INTRODUCTION ........................................................................................................... 1

B. ARGUMENT ................................................................................................................. 2

    I.      Arnold Gundersen has the requisite professional qualifications to render a *daubert*-compliant opinion. ................................................................................................................. 2

        a.      The Defendant Misconstrues the Nature of Mr. Gundersen's Opinion to Wrongly Insinuate that Mr. Gundersen Lacks Appropriate Credentials and Experience. ...................... 3

        b.      Mr. Gundersen Has Appropriate Academic Credentials. ............................................. 4

        c.      Mr. Gundersen Continues to Produce Peer-Reviewed Research. ................................. 6

        d.      Mr. Gundersen Has Testifed in Numerous Cases as Nuclear Power Industry Expert.. 7

    II.      Arnold Gundersen's OPINIONS are based on accepted science AND ADMISSIBLE TESTIMONY. ......................................................................................................................... 8

        a.      Mr. Gundersen Is Entitled to Rely on Disclosed Assumptions Regarding the Facts of this Case. ................................................................................................................................... 8

        b.      Mr. Gundersen's Methodology in Reviewing Mr. Lawson's Form 4 for Errors Was Transparent and Sound. ......................................................................................................... 12

        c.      Mr. Gundersen Alleged Bias Is Irrelevant Even If It Existed. ..................................... 13

C. CONCLUSION ............................................................................................................ 14

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT GENERAL ELECTRIC'S MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. ARNOLD GUNDERSEN        CASE NO.: 16-CV-4299 CRN

i

**Cases**

*Baldwin Graphic Systems, Inc. v. Siebert, Inc.,* No. 03 C 7713, 2005 WL 4034698, *3 n. 3
 (N.D.Ill. Dec. 21, 2005) ................................................................................................. 13

*Cage v. City of Chicago*, 979 F. Supp. 2d 787, 828. (N.D. Ill. 2013) .......................................... 13

*Cooper v. Carl A. Nelson & Co.*, 211 F.3d 1008, 1020 (7th Cir. 2000) ...................................... 11

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93 (1993) ............................... 7, 11, 12

*DiCarlo v. Keller Ladders, Inc.,* 211 F.3d 465, 468 (8th Cir.2000) ............................................ 13

*Finestone* ..................................................................................................................................... 7

*Hose v. Chi. Nw. Transp. Co.*, 70 F.3d 968, 972 (8th Cir. 1995) ................................................ 12

*In re Joint Petition of NorthStar Decommissioning Holdings, Inc*, VT PUC Dkt. No. 8880 ......... 7

*In re Paoli,* 35 F.3d at 749 .......................................................................................................... 13

*In re Unisys Savings Plan Litigation,* 173 F.3d 145, 166, n. 11 (3d Cir.1999) ........................... 13

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999) .......................................................... 7

*Kumho,* 526 U.S. at 156, 119 S.Ct. 1167 ..................................................................................... 5

*Micro Chemical Inc. v. Lextron, Inc.,* 317 F.3d 1387, 1392 (Fed. Cir.2003) ................................ 9

*Nunez v. BNSF Ry. Co.,* 730 F. 3d 681, 684 (7th Cir. 2013) ....................................................... 9

*Pipitone v. Biomatrix, Inc.,* 288 F.3d 239, 249-50 (5th Cir.2002) ................................................ 9

*Richman v. Sheahan*, 415 F. Supp. 2d 929, 943 (N.D. Ill. 2006 ................................................... 9

*Smith v. Ford Motor Co.*, 215 F.3d 713, 720-21 (7th Cir. 2000) ................................................ 12

*Smith*, 215 F. 3d, at 718 ............................................................................................................... 5

*United States v. Conn*, 297 F.3d 548, 555 (7th Cir. 2002) ........................................................... 8

*Walker,* 208 F.3d at 591 ............................................................................................................... 5

*Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 260 (4th Cir. 1999) ...................................... 12

**Rules**

Fed. R. Evid. 401, 402, 702 ......................................................................................................... 12

Fed. R. Evid. 702 ..................................................................................................................... 5, 8

**Treatises**

Charles A. Wright & Victor J. Gold, 29 Fed. Prac. & Proc. Evid. § 6265 ................................... 14

Plaintiff Steve Lawson asks the Court to deny General Electric Company's *Motion to Exclude* the testimony of Mr. Arnold Gundersen, Steve Lawson's expert witness. The reasons therefore are given in the accompanying *Memorandum of Law* below.

## Memorandum of Law

### A. INTRODUCTION

1. The Plaintiff is Steve Lawson; the Defendant is General Electric Company.

2. Plaintiff sued Defendant for "brain degeneration with dementia" caused by cumulative radiation exposure to his entire body. On or about February 11, 2015, Mr. Lawson's treating Neurologist, Dr. Jozef Ottowicz, wrote:

   **"Mr. Steven Lawson is currently under my care, he suffers from brain degeneration with dementia. He has had multiple evaluations including a comprehensive evaluation at The Cognitive Disorders Clinic at University of Utah. His disease is progressing quickly. He has a history of exposure to high doses of nuclear radiation on multiple occasions during his career, which lasted longer than 10 years. I suspect his current neurological condition is more likely than not, to a medical probability, a result of cumulative radiation exposure to his entire body. I am unaware of any treatment to slow the progression of his brain degeneration. I will continue to follow Mr. Steven Lawson neurologically and provide supportive care to him and to his family."**[1]

3. Steve Lawson identified Arnold Gundersen to testify about the following matters:

   a. Whether Mr. Lawson's Form 4 is reflective of the radiation exposure Mr. Lawson was in fact exposed to, based on Mr. Lawson's testimony and the practices of the profession at the time Mr. Lawson was welding in nuclear plants;

   b. Whether Mr. Lawson's Form 4 contains inaccuracies reflective of reckless or intentional underreporting of radiation exposure.

4. Mr. Gundersen's qualifications to give a *Daubert*-compliant professional opinion are based on his academic experience as a nuclear engineer, a formerly licensed

---

[1] Declaration of Arnold Gundersen ("Dec Gundersen"), Exhibit 4

nuclear reactor operator, a vice-president of Nuclear Energy Services – a contractor providing engineering, maintenance, and repair services to numerous reactors and other nuclear licensees – his ongoing peer-reviewed research and public advocacy, his membership on NES' Radiological Safety Committee for a nuclear licensee, and his familiarity with welding processes both as a welder himself and as an employer of welders in nuclear plants.

5. Mr. Gundersen's review of Mr. Lawson's Form 4 and Mr. Lawson's testimony concluded with the opinion that Mr. Lawson experienced significantly more radiation exposure over his career than reflected in the doses recorded by Mr. Lawson's dosimetric equipment.

6. Mr. Gundersen's review of Mr. Lawson's Form 4 and Mr. Lawson's testimony also identified significant irregularities in Mr. Lawson's Form 4 history that rose to the level of either reckless or intentional misrepresentation of Mr. Lawson's exposure history.

7. Mr. Gundersen's expert opinions were based either on peer-reviewed research, commonly accepted principles of radiological physics, or his professional experience in the nuclear power industry, which the Defendant had the opportunity to interrogate in Mr. Gundersen's deposition.

### B. ARGUMENT

### I. ARNOLD GUNDERSEN HAS THE REQUISITE PROFESSIONAL QUALIFICATIONS TO RENDER A *DAUBERT*-COMPLIANT OPINION.

There's an old saying that when you have the law on your side, you pound the law; when you have the facts on your side, you pound the facts; and when you have neither, you

pound the table – or, in this case, the Plaintiffs' expert, Mr. Arnold Gundersen. However, Mr. Gundersen, as will be shown, has particular professional and academic experience that makes him well-qualified to render expert opinions in this matter.

Post-*Daubert*,[2] a court should allow the testimony of an expert witness who is well qualified by knowledge, skill, experience, training, or education to render an opinion based on scientific, technical, or other specialized knowledge.[3] Mr. Gundersen is well qualified, has sound and explicated methodologies for his conclusions, and has based his opinion on the same produced discovery as the Defendant's experts; as such, his expert testimony and opinions should be allowed to be presented to a jury.

    a. <u>The Defendant Misconstrues the Nature of Mr. Gundersen's Opinion to Wrongly Insinuate that Mr. Gundersen Lacks Appropriate Credentials and Experience.</u>

In its *Motion,* the Defendant, in effect, argues that Mr. Gundersen cannot render a professional opinion in this matter because, in sum, he is not a radiation health physicist, he has worked primarily in decommissioning studies, and he has not been allowed in an operating nuclear plant since 1992.[4]

None of these arguments have merit. To begin with, Mr. Gundersen is rendering an opinion which is not, in truth, about the radiological science behind the measuring devices monitoring Mr. Lawson's exposures or the health effects stemming from those exposures; essentially, Mr. Gundersen's opinion assumes that Mr. Lawson, when he was wearing his provided dosimeter, was provided with a functioning one that accurately reflected the radiation load that it was exposed to.[5] He furthermore makes no particular accounting as to what likely

---

[2] *Daubert v. Merrill Dow Pharm., Inc.* 509 U.S. 579 (1993).
[3] *Smith v. Ford Motor Co.,* 215 F. 3d 713, 717 – 718 (7th Cir. 2000); Fed. R. Evid. 702(a).
[4] *Defendant General Electric's Motion to Exclude,* at 11 - 12.
[5] *Declaration of Arnold Gundersen ("Dec Gundersen")*, at ¶ 13.

dose Mr. Lawson did in fact receive; Mr. Gundersen's opinion acknowledges that no one, at this point, can actually do that. What Mr. Gundersen does say is that Mr. Lawson's work duties would have exposed him to a greater amount of radiation than reflected in the dosimetric practices customary at the time Mr. Lawson was welding.

As such, Mr. Gundersen's opinion really may be characterized as whether the professional practices of the time recognized if the operations Mr. Lawson undertook exposed him to greater radiation than the dosimeter would have recorded; that is not a purely scientific question but one which requires a professional awareness of how nuclear plant repairs are planned, performed, and monitored, a mixed question of fact and professional duty – one which is especially well answered by Mr. Gundersen, who was a nuclear power services VP serving on a radiological safety committee for a nuclear licensee at the time Mr. Lawson was most actively welding at nuclear power plants.[6]

b. Mr. Gundersen Has Appropriate Academic Credentials.

Mr. Gundersen possesses both a bachelor's and a master's degree in nuclear engineering.[7] Additionally, he has held an operator's license, has received Atomic Energy Commission fellowship, been appointed a University of Vermont Community Research fellow, and worked as a mathematics professor in the Community College of Vermont system.[8] Finally, Mr. Gundersen is himself a trained welder and is personally familiar what's required to professionally weld. There is nothing in his academic background that suggests Mr. Gundersen is not sufficiently educated to provide a *Daubert*-compliant opinion.

a. Mr. Gundersen Has Extensive Professional Experience Covering the Period Mr.

---

[6] Dec Gundersen, at ¶¶ 3 – 5.
[7] *Id.,* at * p. 12.
[8] *Id.*

Lawson was Actively Welding.

In addition to his educational background, Mr. Gundersen is professionally prepared to testify to the exposures that a welder faces when working on a nuclear power plant.

As reflected in his CV, Mr. Gundersen worked as a nuclear power executive for eleven years (following a decade working as a nuclear engineer,) working his way up from the Director of General Engineering at Danbury, Connecticut to being the Senior Vice President of Technical Services for Nuclear Energy Services.[9] As reflected in his CV, those eleven years – many of which overlap with Mr. Lawson's years working as a welder – involved hiring many, many welders and pipefitters for the projects that Mr. Gundersen supervised.

Thus, Mr. Gundersen is familiar with the reporting requirements inherent in nuclear welding not because he is a health physicist but because he was a corporate official with the direct responsibility to make sure that his employees were working under conditions that complied with the relevant NRC workplace exposure requirements.[10] Thus, not only can he speak to radiological exposure risks as a nuclear engineer, but he can also speak, in thorough detail, to the operating standards and duties both employees and employers were required to meet by the NRC. Mr. Gundersen's opining based on this professional experience is consistent with both *Daubert* and Fed. R. Evid. 702:

> "**Rule 702 specifically contemplates the admission of testimony by experts whose knowledge is based on experience**," *Walker,* 208 F.3d at 591. *See Kumho,* 526 U.S. at 156, 119 S.Ct. 1167 ("[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience."). **Thus, a court should consider a proposed expert's full range of practical experience as well as academic or technical training when determining whether that expert is qualified to render an opinion in a given area**.

*Smith*, 215 F. 3d, at 718. [emphasis added]. Mr. Gundersen's extensive professional history

---

[9] *Id.,* at * p. 28 – 29.
[10] *Id.*

stands in contrast to the assertions of the Defendant, that "[b]efore this case, he had never researched or assessed the adequacy of a dosimetry program or a dose recording program at a nuclear power plant."[11] While the specific and literal terms the Defendant offers are, to their limited extent, true, they elide the twenty years Mr. Gundersen spent in the nuclear power industry **overseeing and implementing** dosimetric protocols for his employees and contractors. Mr. Gundersen does not need to have created a dosimetric system to understand it, implement it, and know when it fails to account for on-the-job overexposures risks.

   c. <u>Mr. Gundersen Continues to Produce Peer-Reviewed Research.</u>

Mr. Gundersen's radiological career did not end when he left the industry but instead expanded into a career in public advocacy advising the public, public interest groups, and assorted governmental bodies as to what exposures may be expected from various nuclear power operations. Although the Defendant has tried to paint Mr. Gundersen as a "decommissioning expert" – a field in which he does admittedly have deep expertise and extensive client commissions – his work focuses more broadly than Defendants admit; for example, Mr. Gundersen has recently published a peer-reviewed article detailing the environmental risks that have been underestimated by both the Japanese government and the Japanese nuclear industry.[12] This article examines the current state of radiological standards in monitoring and testing and shows how the current standards fail to fully account for risks to different sectors of the Japanese population.[13] Additionally, as reflected in his CV, Mr. Gundersen has been the author and co-author of at least ten other studies and reports and

---

[11] *Memorandum to Exclude*, at 12.
[12] Marco Kaltofen and Arnie Gundersen, "Radioactively-Hot Particles Detected in Dusts and Soils from Northern Japan by Combination of Gamma Spectrometry, Autoradiography, and SEM/EDS Analysis and Implications in Radiation Risk Assessment" 607 – 608 Sci. of the Total Env. 1065 (Dec. 31, 2017).
[13] *Id.,* at 1066.

routinely gives public lectures and presentations on issues related to nuclear power safety.[14]

It is therefore clear why Mr. Gundersen's research supports his testimony here – it is a question of evaluating how the then-current industry standards failed to account, in general and in specific to Mr. Lawson, for the full scope of radiological exposures workers and the public are exposed to.

    d.  <u>Mr. Gundersen Has Testifed in Numerous Cases as a Nuclear Power Industry Expert.</u>

As reflected in his CV, Mr. Gundersen has been a testifying expert, testified in no less than thirty public utility commission proceedings and court cases, and, indeed, recently had his testimony unsuccessfully challenged in a current Vermont PUC proceeding contemporary with this matter.[15] Mr. Gundersen is, in short, a very active scholar and expert providing professional testimony in numerous matters related to nuclear power safety. Mr. Gundersen's numerous public testimonies are further proof that Mr. Gundersen is a recognized expert in the field of nuclear power safety. Only the *Finestone* court has found that Mr. Gundersen's opinion was too speculative based on the radiological waste in question, a very fact-dependent and specific analysis not relevant to this matter.

In sum, Mr. Arnold Gundersen is well qualified to testify about the radiological exposures a welder might face on the job and how the then-current radiological regime undercounted certain exposures. This Court should therefore not strike Mr. Gundersen's testimony for want of academic and professional expertise, as Mr. Gundersen has the requisite education and experience to provide an expert's opinion in this matter.

---

[14] Dec Gundersen, at * p. 12 – 22.
[15] The ongoing Vermont matter is *In re Joint Petition of NorthStar Decommissioning Holdings, Inc*, VT PUC Dkt. No. 8880.

## II. ARNOLD GUNDERSEN'S OPINIONS ARE BASED ON ACCEPTED SCIENCE AND ADMISSIBLE TESTIMONY.

A court should allow the testimony of an expert if it is reliable.[16] For the expert's testimony to be reliable, the following requirements must be met: (1) the testimony must be based on sufficient facts or data, (2) the testimony must be the product of reliable principles and methods, and (3) the expert must reliably apply the principles and methods to the facts of the case.[17] This Court should allow the testimony of Mr. Arnold Gundersen for the following reasons.

### a. Mr. Gundersen Is Entitled to Rely on Disclosed Assumptions Regarding the Facts of this Case.

Mr. Gundersen's opinion is based on Mr. Lawson's deposition testimony and Mr. Lawson's Form 4, the same factual basis as reviewed by Dr. Congel, the Defendant's expert. Indeed, much of the Defendant's *Motion to Exclude* is based on the contention that Mr. Gundersen cannot find Mr. Lawson credible because an employee who always followed safety instructions, as Mr. Lawson testified, would never have removed his dosimeter, as Mr. Lawson also testified to.[18] However, Mr. Gundersen is entitled as an expert to rely on the testimony presented to him on a credible basis – the conclusions he comes to then based on those presented facts are then appropriately cross-examined and, potentially, impeached before and found not credible by the jury. A potential contradiction in a witness' testimony is examined for methodological soundness, not conclusions:

> **However, we emphasize that the court's gatekeeping function focuses on an**

---

[16] *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93 (1993).
[17] Fed. R. Evid. 702; *see also United States v. Conn*, 297 F.3d 548, 555 (7th Cir. 2002).
[18] *Memorandum in Support of Motion to Exclude*, 8 – 9.

> **examination of the expert's methodology.** The soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact, or, where appropriate, on summary judgment.

*Smith*, at 718. Furthermore, what is sauce for the goose is sauce for the gander; the Defendant's expert's opinion suffers from the same reliance on Mr. Lawson's testimony as to Mr. Lawson's duties as Mr. Gundersen's, and if Mr. Lawson is a dishonest employee in reflecting his radiation exposure (and Plaintiffs strenuously aver he is honest,) then that goes both to Defendant's liability in allowing an evasive employee to continue to work on a radiologically active site rather than disciplining him and equally undermines Dr. Congel's opinion that Mr. Lawson's Form 4 is accurate, leaving Mr. Lawson's credibility and the resulting soundness of the expert's opinions to be determined by the jury either way.

Thus, as the factual basis for Mr. Gundersen is the same as that as the Defendant, and Mr. Gundersen's ultimate assumptions are, generally, that the radiological and dosimetric equipment used on a given job site was operating on any given day except when otherwise testified to are soundly supported by testimony and are no less sound than the conclusions drawn by the Defendant's expert insofar as they relate to Mr. Lawson's descriptions of his work.[19]

Ultimately, however, it is within Mr. Gundersen's leeway as an expert to testify to the "if" of Mr. Lawson's testimony, leaving it to the jury to determine whether to credit Mr. Lawson:

> An expert could properly testify that **if** [a witness'] testimony that the crossing gates did not begin to descend or the warning lights to flash before the train was within seconds of reaching the crossing was true, then the event recorder beside the tracks, which contradicted that testimony, must have been defective. An expert could also properly testify that what [various witnesses'] claimed to have

---

[19] Dec Gundersen, ¶¶ 7 – 14, 90 – 92.

seen happen could as a technical matter have occurred—but not that any of their testimony was accurate.

*Nunez v. BNSF Ry. Co.,* 730 F. 3d 681, 684 (7th Cir. 2013). [emphasis original]. Indeed, Rule 702 envisions factual disputes, as the Advisory Committee's Note to Rule 702 demonstrates:

> **When facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts. The emphasis in the amendment on "sufficient facts or data" is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other.**
>
> **The Advisory Committee stressed that "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system" or to allow the district court to preempt the jury by evaluating the correctness of the facts on which the expert relied**. *See Micro Chemical Inc. v. Lextron, Inc.,* 317 F.3d 1387, 1392 (Fed. Cir.2003); *Pipitone v. Biomatrix, Inc.,* 288 F.3d 239, 249-50 (5th Cir.2002). Yet, exclusion of expert testimony on the ground that it relied on one version of events would have precisely that effect.

*Richman v. Sheahan*, 415 F. Supp. 2d 929, 943 (N.D. Ill. 2006) [emphasis added]. Here, although Mr. Gundersen does indeed believe Mr. Lawson's testimony, that personal belief is irrelevant inasmuch as it goes to Mr. Lawson's credibility, not Mr. Gundersen's methodology. Mr. Gundersen can creditably testify to whether Mr. Lawson was overexposed based on the assumption that Mr. Lawson was truthful and leave the determination of Mr. Lawson's truthfulness to the jury so long as Mr. Gundersen makes clear where he is relying on Mr. Lawson's testimony and what effect on his conclusions there would be if Mr. Lawson were, hypothetically, inaccurate about his dosimetric practices.

a. <u>Mr. Gundersen's Claim GE Should Have Required Mr. Lawson Is Soundly Within His Professional Expertise as a Standard of the Profession and Is Not a Legal Conclusion.</u>

Significantly, the Defendant primarily attacks Mr. Gundersen's lack of a health physics background as the basis for challenging his opinion a head dosimeter should have been given

to Mr. Lawson.[20] Additionally, the Defendant attempts to rephrase a question of work-site responsibility within Mr. Gundersen's expertise as a legal responsibility determination outside of it.

What Mr. Gundersen's testimony goes to, however, is that the dosimetric equipment was not located in a manner designed to capture the maximum dose to which Mr. Lawson's extremities were exposed, nor was it designed to capture the doses to which more sensitive organs, such as the eyes, were located. It does not, however, go to what health risks Mr. Lawson suffered as a result of the radiation exposure – although Mr. Gundersen was able to accurately predict that Mr. Lawson would have developed cataracts from his exposure.[21] Mr. Gundersen's health risk assessment is based on a relatively simple analysis; he analyzed whether Mr. Lawson's extremities would be closer to the radiation source than the dosimeter during various periods of Mr. Lawson's welding operations.

Mr. Gundersen's opinion as to who was responsible for not providing Mr. Lawson with a head dosimeter was based on the description of the worksites in question and who provided what services there; given those statements, Mr. Gundersen is entitled by his professional experience to state that it was GE's role on the worksite to manage dosimetric procedures for the equipment they produced and continued to certify via its "N-stamp". If that testimony is inaccurate, then there is a question for the jury as to whether to continue to credit Mr. Gundersen's testimony. But Mr. Gundersen's testimony is not a legal conclusion of liability but instead a description of who managed what role on Mr. Lawson's worksites. GE may very well have legal defenses for its mismanaged oversight of nuclear repairs – but those defenses are different from whether Mr. Lawson's supervisors acted appropriately in allocating him only

---

[20] *Memarandum in Support of Motion to Exclude,* at 14 – 15
[21] Dec Gundersen, ¶¶ 31 – 34.

a lanyard dosimeter or TLD.

    b. <u>Mr. Gundersen's Methodology in Reviewing Mr. Lawson's Form 4 for Errors Was Transparent and Sound.</u>

Basic physics let Mr. Gundersen opine that placing Mr. Lawson's dosimeter around a lanyard led to lower overall exposure doses readings for Mr. Lawson over the course of Mr. Lawson's welding career, but, in particular, the periods of time where Mr. Lawson was engaged in direct welding.

This kind of examination is not only accepted in the field,[22] it is the same exact analysis the Defense expert Dr. Congel engaged in. Dr. Congel's opinions are, in effect, based on nothing more than the same factual bases as Mr. Gundersen's – the standard practices of the profession in face of recognized risks as applied to the description of Mr. Lawson's employment as provided by him and a handful of other witnesses. Thus, if Mr. Gundersen's bases for his opinions as to distance and exposure are unacceptable in the industry, so are Dr. Congel's.

Ultimately, Mr. Gundersen's opinion was subsequently based on inaccuracies in Mr. Lawson's Form 4, which were based on Mr. Gundersen's professional experience as a nuclear engineer and nuclear engineering executive in the period of Mr. Lawson's employment, on which he is entitled to rely. Mr. Gundersen's expertise in this area is patent, based on known NRC reporting requirements, and the errors he opined on are apparent to someone with Mr. Gundersen's training. His opinions on this matter were furthermore laid bare at deposition, in which the Defendant spent several hours probing Mr. Gundersen's testimony.

---

[22] The expert's opinion is consistent with the generally accepted methods used for gathering relevant scientific evidence in the expert's discipline. *See Daubert*, 509 U.S. at 594; *Cooper v. Carl A. Nelson & Co.*, 211 F.3d 1008, 1020 (7th Cir. 2000).

Ultimately, however, the Plaintiffs are entitled to put on their expert, assuming the testimony is relevant and the methodology clear, and to have their expert's testimony available for the jury to weigh against the methodology and conclusions of the opposing expert.[23] Weak or not – and the Plaintiffs aver Mr. Gundersen's conclusions as to radiological overexposure are clear, sound, and persuasive – given Mr. Gundersen's strong background, lucid methods, and cogent explanations, the Plaintiffs are entitled to put him before the jury.

    c.  <u>Mr. Gundersen Alleged Bias Is Irrelevant Even If It Existed.</u>

General Electric, in sum, wants to strike Mr. Gundersen because he allegedly has a bias against the nuclear industry.[24] However, even assuming Mr. Gundersen's personal experiences and beliefs are that the nuclear industry is rife with safety risks, not only does that alleged bias not play into his specific opinion that Mr. Lawson, in particular and in fact, was exposed to greater doses of radiation than reflected in Mr. Lawson's Form 4, but also it is an impermissible ground to strike Mr. Gundersen's otherwise sound testimony.

---

[23] A court should allow the opinion testimony of an expert if it is relevant. Fed. R. Evid. 401, 402, 702; *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 260 (4th Cir. 1999); *see Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93 (1993); *Ambrosini v. Labarraque*, 101 F.3d 129, 134-36 (D.C. Cir. 1996). Relevance requires that there be a valid scientific connection to the pertinent inquiry in the case. *Smith v. Ford Motor Co.*, 215 F.3d 713, 720-21 (7th Cir. 2000); *Hose v. Chi. Nw. Transp. Co.*, 70 F.3d 968, 972 (8th Cir. 1995). Ultimately, this Court should allow the testimony of Mr. Gundersen, because the evidence supporting the expert's opinion is sufficient to allow a reasonable juror to conclude that the proposition is more likely to be true than false.

[24] *Memorandum in Support of Motion to Exclude,* at 18 – 19.

> However it is well-established that an expert's bias is not a proper basis to bar testimony under *Daubert*. *See DiCarlo v. Keller Ladders, Inc.,* 211 F.3d 465, 468 (8th Cir.2000) ("Determining the credibility of a witness is the jury's province, whether the witness is lay or expert, and an expert witness's bias goes to the weight, not the admissibility of the testimony, and should be brought out on cross-examination.") (citations omitted); *In re Unisys Savings Plan Litigation,* 173 F.3d 145, 166, n. 11 (3d Cir.1999) ("Courts have held in numerous other cases that credibility is irrelevant to determining whether a proposed expert witness's testimony is admissible under Rule 702, and particularly whether it is based on reliable methodology.... For example, expert witnesses cannot be excluded on the basis of bias."); *In re Paoli,* 35 F.3d at 749 ("[E]valuating the reliability of scientific methodologies and data does not generally involve assessing the *truthfulness* of the expert witnesses...."); *see also Baldwin Graphic Systems, Inc. v. Siebert, Inc.,* No. 03 C 7713, 2005 WL 4034698, *3 n. 3 (N.D.Ill. Dec. 21, 2005) ("[A]lleged bias is fodder for cross-examination and impeachment, not a ground for exclusion."); Charles A. Wright & Victor J. Gold, 29 Fed. Prac. & Proc. Evid. § 6265 **("[T]he courts may not consider credibility questions such as bias when exercising their discretion as to whether a witness qualifies as an expert."**). Accordingly, Keel's testimony will not be barred based on his partiality against Fish.

*Cage v. City of Chicago*, 979 F. Supp. 2d 787, 828. (N.D. Ill. 2013) [emphasis added]. Thus, Mr. Gundersen's alleged personal bias is irrelevant as a basis for this present *Motion to Strike*.

### C. CONCLUSION

For these reasons, Steve Lawson asks the Court to set the motion for a hearing and, after the hearing, to deny the motion to exclude the testimony of Steve Lawson's expert, Mr. Arnold Gundersen.

DATED: March 2, 2018                **RESPECTFULLY SUBMITTED**
                                    **LAW OFFICES OF BONNER AND BONNER**


                                    By:*/s/ CHARLES A. BONNER*
                                    CHARLES A. BONNER
                                    ATTORNEY FOR PLAINTIFFS