## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| STEVEN LAWSON, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 16-CV-4299 |
| v. | ) | |
| | ) | Hon. Charles R. Norgle |
| GENERAL ELECTRIC COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiffs Steven Lawson ("Mr. Lawson") and Darla Lawson (collectively, "Plaintiffs") bring this public liability action against General Electric Company ("GE") under the Price-Anderson Act, 42 U.S.C. § 2011, *et seq*. Plaintiffs claim that Mr. Lawson developed brain degeneration with dementia as the result of occupational doses of radiation he received while working on numerous nuclear power plants in the United States and Spain. Before the Court is Defendant's motion for summary judgment, focused on the issue of whether GE owed Mr. Lawson a duty of care, as provided by federal permissible radiation dose limits. For the following reasons, Defendant's motion is granted.

### I. BACKGROUND

#### A. Factual Background

Prior to his retirement, Mr. Lawson was a highly skilled welder employed by The Great Atlantic Pacific Pipe Welding & Construction Company, Inc. ("GAPCO"). GAPCO was created as a wholly owned subsidiary of Dimetrics, a company formed by Mr. Lawson's father-in-law to do business in the welding industry.

From 1979 through 1986, Mr. Lawson performed welding work on Boiling Water Reactors ("BRW") that were designed and manufactured by GE for use in nuclear power plants. Mr. Lawson worked on BWRs installed in nuclear power plants located in California, New York, New Jersey, Connecticut, Pennsylvania, North Carolina, Illinois, Nebraska, Alabama, and Vermont. Mr. Lawson also performed welding work on a BWR located in Spain.

The purpose of Mr. Lawson's work was to address and repair intergranular stress corrosion cracking that had developed in pipes attached to the BWRs.[1] As an employee of GAPCO, Mr. Lawson's work on the BWRs consisted of two main categories: weld overlay and pipe replacement.[2] This work required both manual and automated welding, with the latter using automated welding equipment developed by Dimetrics. Mr. Lawson spent most of his time working on the BWRs running the automated welding equipment, although he also performed some manual welds. Mr. Lawson was additionally tasked with training and supervising local welders hired to assist with the weld overlay and pipe replacement projects.

Each power plant where Mr. Lawson worked was owned and operated by a "Licensee." The term Licensee is this context refers to the utility that applied for and received a license from the Nuclear Regulatory Commission ("NRC") to operate a commercial nuclear power plant. Def.'s SOMF ¶ 4. GE was not the Licensee of any of the power plants where Mr. Lawson worked. GE has produced a list of the Licensees for all of the power plants where Mr. Lawson worked. The list was compiled from publically available documents maintained by the NRC. Plaintiffs' First Amended Complaint ("FAC") alleges that GE was a Licensee or otherwise

---

[1] Intergranular stress corrosion cracking is microscopic cracks that can develop over time in between the grains of metal from the simultaneous presence of tensile stress, high temperature oxygenated water, and the depletion of chromium at the grain boundary that results from welding.

[2] A weld overlay involved the application of a stainless weld over an existing weld connecting two pipes, with the purpose being to provide additional structural reinforcements to the weld joint. A pipe replacement project involved cutting and removing the affected pipe attached the BWE (work that Mr. Lawson did not do) and welding a new section of pipe in place.

maintained ownership or control over the relevant nuclear power plants or BWRs. FAC ¶¶ 9, 11, 14, 16, 19, 22, 40. Despite these allegations, Plaintiffs do not presently dispute that GE was not the Licensee of any of the power plants where Mr. Lawson worked.

The Licensees of the power plants where Mr. Lawson worked were responsible for hiring the various companies to complete the weld overlay and pipe replacement projects on the BWRs. The Licensees coordinated the projects through prime contractors, which in turn hired specialty subcontractors—including GAPCO—to perform specific maintenance activities. GE's role in repairing the BWRs was to ensure that the welds completed by Mr. Lawson and other GAPCO employees complied with relevant industry standards. GE also generally supported various aspects of the welding projects at the power plants where Mr. Lawson worked. GE initially contacted Dimetrics because the company had developed automated welding equipment that could remotely complete the welds on the BWRs. GE provided Dimetrics with weld specifications and Dimetrics developed the necessary procedures and protocols for its automated welding equipment. Dimetrics then contracted directly with the various prime contractors to provide the automated welding equipment. GAPCO was hired directly by the prime contractors to provide supervisors, such as Mr. Lawson, who had the expertise to use Dimetric's automated welding equipment, as well as other qualified workers to complete the BWR welding projects.

Plaintiffs' FAC alleges that GE failed to take the necessary precautionary measures to ensure that Mr. Lawson was not exposed to an amount of radiation in excess of federal permissible radiation dose limits[3] while working on the BWRs. FAC ¶¶ 10, 11, 33, 38. Plaintiffs additionally allege that GE required Mr. Lawson to continue working on its BWRs with

---

[3] As discussed *infra*, the applicable federal permissible dose limits for the period of Mr. Lawson's exposure are set forth under 10 C.F.R. 20.101 (1986). See In re TMI, 67 F.3d 1103, 1108 n. 10 (3d Cir. 1995) (applying federal regulations in place at the time of the alleged nuclear incident).

knowledge that he had been cumulatively exposed to excessive and harmful levels of radiation. Id. ¶¶ 34, 38. The FAC specifically alleges that GE had a duty to protect Mr. Lawson from incurring occupational doses of radiation in excess of applicable federal permissible dose limits. Id. ¶ 37. Mr. Lawson suffers from brain degeneration with dementia, allegedly as the result of his repeated exposure to excessive doses of radiation while working on the BWRs.

**B. Procedural Background**

Plaintiffs filed their initial complaint against GE in the Northern District of California on May 28, 2015. In their initial complaint, Plaintiffs set forth six causes of action against GE: (1) Negligence; (2) Strict Liability for Ultra Hazardous Activities; (3) Strict Liability Manufacturing and Design Defect; (4) Premises Liability; (5) Negligence Per Se; and (6) Loss of Consortium. In response, GE filed a motion to dismiss based on two separate grounds: (1) Plaintiffs' six state claims were preempted by the Price-Anderson Act; and (2) the court lacked subject matter jurisdiction.

In its September 23, 2015 Order, the court granted in part and denied in part GE's motion to dismiss. As an initial matter, the court considered whether Plaintiffs' complaint alleged a "public liability action" as defined by the Price-Anderson Act. The court stated that "[u]nder the Price-Anderson Act, a public liability action is 'any suit asserting public liability,'" with public liability defined as "any legal liability arising out of or resulting from a nuclear incident." Lawson v. Gen. Electric Co., 140 F. Supp. 3d 968, 972 (N.D. Cal. 2015) (quoting 42 U.S.C. § 2014(hh) and (w)). The court further stated that "[a] nuclear incident is 'any occurrence…causing …bodily injury, sickness, disease, or death, or loss of or damage to property, or loss of use of property, arising out of or resulting from the radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material.'" Id.

4

(quoting 42 U.S.C. § 2014(q)). Based on these provisions, the court concluded that Plaintiffs' "alleged exposure to radiation on the job is enough to constitute a nuclear incident," and therefore Plaintiffs' complaint alleged a public liability action under the Price-Anderson Act.

Next, the Court held that Plaintiffs' state law claims were preempted by the Price-Anderson Act because they were based on theories of liability that are inconsistent with the duty of care set by the applicable federal permissible dose limits. In reaching this decision, the court noted that:

> Courts have interpreted the effect of the Price-Anderson's "hybrid" provision as allowing state claims to proceed, but only so long as the measure of the Defendant's duty is proscribed by federal safety regulations setting forth radiation exposure limit. The dose limits are an attempt to reconcile public and worker safety with the inevitable reality that "radiation workers of necessity will receive some low level radiation exposure because some exposure in an unavoidable aspect of working in a radiation area."

Id. at 973 (internal citations omitted). However, the court permitted Plaintiffs' negligence claim to proceed, but held that "it becomes the 'public liability action' created by Price-Anderson, with the sole duty of care provided by" the applicable federal permissible dose limits in Title 10 of the Code of Federal Regulations. Id. at 974. The court also noted that the applicable standard of care set by federal permissible dose limits would "depend on the dates of the incident." Id. (citing TMI, 67 F.3d 1108 n. 10). Finally, in denying Defendants' motion in part, the Court held that it had subject matter jurisdiction over the case.

Following the court's dismissal of the state law claims, Plaintiffs filed their FAC alleging two causes of action: (1) a public liability action under the Price-Anderson Act; and (2) a state law negligence claim. Both causes of action alleged that GE breached the applicable federal permissible dose limits. However, Plaintiffs' negligence claim also alleged theories of liability based on negligence per se. See FAC ¶ 41. In response, GE filed a motion to strike this portion

of the FAC.

The court granted GE's motion to strike, holding that Plaintiffs' "negligence per se theories of liability alleging a duty of care other than the regulations proscribing radiation exposure limits are preempted by the Price-Anderson Act." Lawson v. Gen. Electric Co., 15-CV-02384-TEH, 2015 WL 7710296, at *2 (N.D. Cal. Nov. 30, 2015). Thus, the court reaffirmed that "while the Price-Anderson Act is not a complete preemption statute, it does preempt causes of action that are based on duties of care that are inconsistent with the sole duty of care in a public liability action, which is proscribed by federal safety regulations setting forth radiation exposure limits." Id. at *1.

On February 29, 2016, GE filed a motion to transfer venue under 42 U.S.C. § 2210(n)(2), arguing that venue was improper in the Northern District of California because Plaintiffs lacked evidence to support that Mr. Lawson's injuries arose from a nuclear incident in that district. The Court agreed, holding that GE demonstrated "an absence of credible evidence that Mr. Lawson received an occupational dose of radiation at the Humboldt Bay Nuclear Power Plant…which is the location upon which Plaintiffs rely." Lawson v. Gen. Electric Co., 15-CV-02384-TEH, 2016 WL 1427501, at *2 (N.D. Cal. Apr. 12, 2016). In determining the proper venue, the court considered Mr. Lawson's NRC Form 4: Occupational Dose History ("Form 4")—a document maintained by the NRC for the purpose of tracking the occupational radiation exposures of nuclear workers. The court noted that "[t]he operators of power plants and other Licensees under the Price-Anderson Act are required to contribute to the Form 4." Id. at *3 (citing 10 C.F.R. § 20.2104). The court found venue was proper in the Northern District of Illinois under 42 U.S.C.§ 2210(n)(2), given that Mr. Lawson's Form 4 indicated that he received an occupational dose of radiation at the Dresden Generating Station nuclear power plant located in the Northern

District of Illinois. Id. at *4. The court also considered Plaintiffs' request that the action be transferred to the Northern District of Illinois, should the court decide that transfer of venue is proper. Id. Accordingly, the court granted GE's motion and the action was transferred to this district. Id.

## II. DISCUSSION

### A. Standard of Review

"Summary judgment is appropriate when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Northfield Ins. Co. v. City of Waukegan, 701 F.3d 1124, 1128 (7th Cir. 2012) (quoting Fed. R. Civ. P. 56(a)); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Wells v. Coker, 707 F.3d 756, 760 (7th Cir. 2013) (internal quotation marks and citation omitted). "On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." Payne v. Pauley, 337 F.3d 767, 770 (7th Cir. 2003) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). The Court must view "the record in the light most favorable to the nonmovant and [avoid] the temptation to decide which party's version of the facts is more likely true." Id.

### B. The Price-Anderson Act

Congress enacted the Price-Anderson Act in 1957 for the purpose of "protect[ing] the public and…encourag[ing] the development of the atomic energy industry." 42 U.S.C. § 2012. The Price-Anderson Act had three main components: (1) It "'established a limit on the aggregate liability of those who wished to undertake activities involving the handling or use of radioactive

materials'; (2) It channeled public liability resulting from nuclear incidents to the federal government; and (3) It established that all public liability claims above the amount of required private insurance 'protection would be indemnified by the Federal Government, up to the aggregate limit on liability.'" O'Conner v. Cmmw. Edison Co., 13 F.3d 1090, 1095 (7th Cir. 1994) (quoting S. Rep. No. 218, 100th Cong., 1st Sess. 2 (1987), reprinted in 1988 U.S.C.C.A.N. 1424, 1476, 1477)).

"In 1966, prior to the scheduled expiration of the Price–Anderson Act, the liability limitation portions of the Act were extended for an additional ten years and a new provision was added which required that those indemnified waive the defenses of negligence, contributory negligence, charitable or governmental immunity, and assumption of the risk in the event of an action arising as the result of an extraordinary nuclear occurrence." In re TMI Litig. Cases Consol. II, 940 F.2d 832, 852 (3d Cir. 1991) (citing 42 U.S.C. § 2210(n)(1)). "The 1966 Amendments also provided for the transfer, to a federal district court, of all claims arising out of an extraordinary nuclear occurrence."[4] Id. (citing 42 U.S.C. § 2210(n)(2)).

The Price-Anderson Act was amended for a second time in 1975. "These amendments extended the Act's coverage and made certain liability limitation adjustments. Provision was [also] made to phase out the federal indemnity portion of the Price–Anderson scheme." Id. at 852–53.

In 1988, Congress amended the Price-Anderson Act for a third time with the Price–Anderson Amendments Act of 1988 (the "Amendments Act"). The Amendments Act made a

---

[4] "The term 'extraordinary nuclear occurrence' means any event causing a discharge or dispersal of source, special nuclear, or byproduct material from its intended place of confinement in amounts offsite, or causing radiation levels offsite, which the Nuclear Regulatory Commission or the Secretary of Energy, as appropriate, determines to be substantial, and which the Nuclear Regulatory Commission or the Secretary of Energy, as appropriate, determines has resulted or will probably result in substantial damages to persons offsite or property offsite." 42 U.S.C. § 2014.

number of comprehensive changes to the Price-Anderson Act. Most pertinent to the case at hand,
"the Amendments Act expanded the reach of 42 U.S.C. § 2210(n)(2) to provide for removal of,
and original federal jurisdiction over, claims arising from any 'nuclear incident,' instead of
actions arising only from [extraordinary nuclear occurrences]." O'Conner, 13 F.3d at 1096. The
amended section 2210(n)(2) reads as follows:

> With respect to any public liability action arising out of or resulting from a
> nuclear incident, the United States district court in the district where the nuclear
> incident takes place, or in the case of a nuclear incident taking place outside the
> United States, the United States District Court for the District of Columbia, shall
> have original jurisdiction without regard to the citizenship of any party or the
> amount in controversy. Upon motion of the defendant or of the Commission or
> the Secretary, as appropriate, any such action pending in any State court
> (including any such action pending on August 20, 1988) or United States district
> court shall be removed or transferred to the United States district court having
> venue under this subsection. Process of such district court shall be effective
> throughout the United States.

42 U.S.C.A. § 2210(n)(2). Further, the Amendments Act added section 2214(hh), which provides
the following definition for public liability action, as referenced in section 2210(n)(2):

> The term "public liability action", as used in section 2210 of this title, means any
> suit asserting public liability. A public liability action shall be deemed to be an
> action arising under section 2210 of this title, and the substantive rules for
> decision in such action shall be derived from the law of the State in which the
> nuclear incident involved occurs, unless such law is inconsistent with the
> provisions of such section.

42 U.S.C. § 2014(hh). Thus, the Amendments Act created a new federal cause of action—the
public liability action—which Congress has specified to be "an action arising under the Price–
Anderson Act." O'Conner, 13 F.3d at 1096 (quoting S.Rep. No. 218 at 13).

"While the public liability cause of action itself and certain elements of the recovery
scheme are federal, the underlying rules of decision are to be derived from state law." TMI, 940
F.2d at 854; O'Conner, 13 F.3d at 1096. However, "Congress did not adopt in wholesale fashion
state law." O'Conner, 13 F.3d at 1100. Rather, "[s]tate law serves as the basis for the cause of

action only as long as state law is consistent with the other parts of the Act." Id. "Congress desired that state law provide the content for and operate as federal law...[but] Congress recognized that state law would operate in the context of a complex federal scheme which would mold and shape any cause of action grounded in state law." Id. Therefore, "in every case alleging public liability, courts will be required to determine whether state law principles conflict with other parts of the Price–Anderson scheme." TMI, 940 F.2d at 858.

### C. GE Did Not Owe Mr. Lawson a Duty of Care Because GE Was Not the Licensee of the Power Plants Where Mr. Lawson Worked

Previous to the transfer of this case, the district court for the Northern District of California held that Plaintiffs' state law negligence claim served as the basis for their public liability action. Lawson, 140 F. Supp. 3d at 974 ("Plaintiff[s'] negligence claim may proceed, but it becomes the 'public liability action' created by Price-Anderson"). Now, Illinois law provides the basis for Plaintiffs' public liability action. See 42 U.S.C. § 2014(hh) ("[T]he substantive rules for decision in such action shall be derived from the law of the State in which the nuclear incident involved occurs."). Thus, Plaintiffs must "establish the existence of a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach." Simpkins v. CSX Transp., Inc., 965 N.E.2d 1092, 1096 (Ill. 2012). "Whether a duty exists in a particular case is a question of law for the court to decide." Marshall v. Burger King Corp., 222 Ill. 2d 422, 430 (2006). Although Illinois law supplies the basis of Plaintiffs' public liability action, the Court is mindful that "[s]tate law serves as the basis for the cause of action only as long as state law is consistent with the other parts of the [Price-Anderson scheme]." O'Conner, 13 F.3d at 1100; TMI, 940 F.2d at 858.

Plaintiffs' assert that GE had a duty to protect Mr. Lawson from occupational radiation exposure in excess of the applicable federal permissible dose limits. As previously held, the sole

duty of care in the case is "provided by Title 10 of the Code of Federal Regulations." <u>Lawson</u>, 140 F. Supp. 3d at 974. Accordingly, the sole duty of care is set forth under 10 C.F.R. § 20.101 (1986) ("Part 20 dose limits") because these were the dose limits in effect at the time of Mr. Lawson's exposure. <u>See</u> <u>TMI</u>, 67 F.3d at 1108 n. 10 (applying federal regulations in place at the time of the alleged nuclear incident).

The dispositive issue before the Court is whether Part 20 dose limits—being the sole duty of care—apply to GE. In other words, the issue is whether GE owed Mr. Lawson a duty of care to comply with Part 20 dose limits. GE argues that there is a preemptive and pervasive federal regulatory scheme governing the safety and operation of nuclear power plants, as set forth under 10 C.F.R. § 20, *et seq.* ("Part 20"), and that this regulatory scheme requires only the Licensee of a nuclear power plant to comply with the Part 20 dose limits for nuclear workers such as Mr. Lawson. GE further contends that it was never the Licensee of any of the power plants where Mr. Lawson worked, and therefore it owed Mr. Lawson no duty to comply with Part 20 dose limits.

## 1. Part 20 Dose Limits Apply Only to Licensees

The Court starts its analysis by examining the language of the Part 20 dose limits. The regulation reads as follows:

### § 20.101 Radiation Dose Standards for Individuals in Restricted Areas

(a) In accordance with the provisions of § 20.102(a), and except as provided in paragraph (b) of this section, *no licensee shall* possess, use, or transfer licensed material in such a manner as to cause any individual in a restricted area to receive in any period of one calendar quarter from radioactive material and other sources of radiation a total occupational dose in excess of the standards specific in the following table:

REMS PER CALENDAR QUARTER

1. Whole body; head and trunk; active blood-forming organs; lens of eyes, or gonads … 1 ¼

11

2. Hand and forearms; feet and ankles … 18 ¾
3. Skin of whole body … 7 ½
(b) *A licensee may* permit an individual in a restricted area to receive a total occupational dose to the whole body greater than that permitted under paragraph (a) of this section provided: (1) During any calendar quarter the total occupational dose to the whole body… shall not exceed 3 rems.

10 C.F.R. § 20.101. (emphasis added). "'Licensed material' means source material, special nuclear material, or by-product material received, possessed, used, or transferred under a general or specific license issued by the Commission pursuant to the regulations in this chapter." 10 C.F.R. § 20.3(8). A "[r]estricted area means any area access to which is controlled by the licensee for purposes of protection of individuals from exposure to radiation and radioactive materials."[5] 10 C.F.R. § 20.3(14). "Occupational dose includes exposure of an individual to radiation (i) in a restricted area." 10 C.F.R. § 20.3(10).

Consistent with GE's argument, section 20.101 uses language such as "no licensee shall" and "a licensee may," which indicates that the Licensee *alone* bears the duty to protect nuclear workers in restricted areas from excessive doses of radiation. Further provisions of Part 20 confirm that this duty is owed only by the Licensee. Section 20.102 addresses the "Determination of Prior Dose" and states that "*each licensee shall*" require an individual to report his prior occupational dose "prior to first entry of the individual into *the licensee's* restricted area." 10 C.F.R. 20.102(a) (emphasis added). Section 20.102 further provides that:

Before permitting, pursuant to § 20.101(b), any individual in a restricted area to receive an occupational radiation dose in excess of the standards specified in § 20.101(a), *each licensee shall*: (a) Obtain a certificate on Form NRC-4, or on a clear and legible record containing all the information required in that form, signed by the individual showing each period of time after the individual attained the age of 18 in which the individual received an occupational dose; and (2) Calculate on Form NRC-4…or on a clear and legible record containing all the

_____

[5] The Licensees of the power plants where Mr. Lawson worked had exclusive control over access to any restricted area where Mr. Lawson might have received an occupation dose of radiation. See Def.'s SOMF ¶ 26. Plaintiffs' PLA falls squarely under the purview of Part 20 dose limits because Plaintiffs claim that Mr. Lawson received excessive occupational doses of radiation while working on the BWRs.

> information in that form, the previously accumulated occupational dose received
> by the individual and the additional dose allowed for that individual under
> § 20.101(b).

10 C.F.R. 20.102(b)(1)-(2) (emphasis added). In addition, the "*licensee shall*" make a reasonable

efforts to collect the reports of an individual's previously accumulated occupational dose, and

"*the licensee shall*" take appropriate steps to retain the records used by the NRC to prepare its

Form-4. 10 C.F.R. § 20.102(c)(1)-(2) (emphasis added).

Section 20.103 addresses the exposure of individuals to concentrations of radioactive

materials in air in restricted areas. Section 20.103 provides that "*no licensee shall*" use licensed

material in a manner that permits an individual in a restricted area to inhale a quantity of

radioactive material in excess of certain concentration limits set by the NRC. 10 C.F.R. 103(a)

(emphasis added). Section 103 further provides that "[f]or purposes of determining compliance

with the requirements of this section *the licensee shall* use suitable measurements of

concentrations of radioactive materials in air for detecting and evaluating airborne radioactivity

in restricted areas," and that "*[t]he licensee shall*, as a precautionary procedure, use process or

other engineering controls, to the extent practicable, to limit concentrations of radioactive

materials" to certain levels set by the NRC. 10 C.F.R. 103(a)(3) and (b)(1) (emphasis added).

Section 20.202 addresses personnel monitoring, and requires that "*[e]ach licensee shall*

supply appropriate personnel monitoring equipment to, and shall require the use of such

equipment by: (1) Each individual who enters a restricted area under such circumstances that he

receives, or is likely to receive, a dose in any calendar quarter in excess of 25 percent of the

applicable value specified in paragraph (a) of § 20.101." 10 C.F.R. § 20.202(a)(1) (emphasis

added). "'Personnel monitoring equipment' means devises designed to be worn or carried by an

individual for the purpose of measuring the dose received (e.g., film badges, pocket chambers,

pocket dosimeters, film rings, etc.)." 10 C.F.R. § 20.202(b)(1).

In short, Part 20 regulations place the duty of controlling, monitoring, and recording the occupational dose of nuclear workers in restricted areas, such a Mr. Lawson, solely upon the Licensee. Moreover, there is no provision that would permit a non-Licensee, such as GE in this case, to assume the Licensee's duty to comply with Part 20 regulations, including Part 20 dose limits.

GE has submitted certain NRC licensing documents which further confirm that Part 20 dose limits apply only to the Licensees of nuclear power plants. The Final Safety Analysis Report, which is incorporated into each operating license for a commercial nuclear power plant, states that "all activities at the station site will be under the control of the [Licensee] at all times," and that the requirements of Part 20 regulations are used as basis for "control of radiation exposure of station personnel." Def.'s SOMF ¶ 15, Exh. A at 7, Exh. N. The Technical Specifications prepared by each Licensee incorporate compliance with Part 20 regulations and require the Licensee to maintain dose records for all personnel at a nuclear power plant, including contractors who receive an occupational dose. Id. ¶ 16, Exh. A at 8, Exh. O. The Safety Evaluation Report is prepared by the NRC to document its findings regarding the Licensee's compliance with the requirements provided in the Final Safety Analysis Report, including Part 20 regulations. Id. ¶ 17, Exh. A at 8, Exh. P. Finally, when all requirements set forth in the licensing documents have been fulfilled, the NRC issues the operating license, which covers the nuclear power plant and everything within the boundary of the facility, including the radioactive fuel, byproduct material, activation products or any other source of radiation that could deliver an occupational dose. Id., Exh. A at 8.

Based on the foregoing, the Court concludes that Part 20 dose limits apply only to the Licensees of nuclear power plants. As discussed above, Plaintiffs do not dispute that GE was not the Licensee of the nuclear power plants where Mr. Lawson worked and received occupational doses of radiation. Accordingly, under the relevant federal regulations, GE owed no duty to Mr. Lawson to comply with Part 20 dose limits—the sole duty of care in this case.

**2. Extending the Duty to Comply with Part 20 Dose Limits to GE Under Illinois Law Would Conflict With the Price Anderson Act**

Plaintiffs raise three arguments in opposition to GE's motion: (1) Plaintiffs do not seek to impose a standard that is in conflict with the Price-Anderson Act; (2) Under Illinois law, GE owed Mr. Lawson a duty to comply with the Part 20 dose limits because GE was his *de facto* employer; and (3) Under Illinois law, GE owed Mr. Lawson a duty to comply with the Part 20 dose limits because GE's negligent design of the BWRs set these events into motion.

As an initial matter, the Court notes that Plaintiffs' first argument is comprised of several paragraphs copied verbatim from the transferring court's September 23, 2015 Order. Compare Pls.' Mem. in Opp'n at 12, with Lawson, 140 F. Supp. 3d at 972-73. Plaintiffs' counsel provides no citation to the court's September 23, 2015 Order, but rather presents the copied paragraphs as their own argument. Putting this aside, Plaintiffs raise the issue that the "Price-Anderson [Act] does not categorically preempt all claims in the field of nuclear safety; it merely preempts those that are inconsistent." Lawson, 140 F. Supp. 3d at 973. Plaintiffs cite to cases from numerous other districts in which the court permitted various state law causes of action to proceed.[6] See Corcoran v. New York Power Auth., 935 F.Supp. 376 (S.D.N.Y.1996) (holding that the plaintiff's state law claim for fraudulent concealment was not inconsistent with the Price-

---

[6] Because Plaintiffs' counsel copied and pasted this argument, these are the same cases cited by the transferring court in its September 23, 2015 Order, in which the court held that Plaintiffs' state law claims were preempted by the Price-Anderson Act.

Anderson Act); <u>Cook v. Rockwell Int'l Corp.</u>, 273 F.Supp.2d 1175 (D. Colo. 2003) (holding that the plaintiff's trespass and nuisance claims were not preempted by the Price-Anderson Act); <u>Bohrmann v. Maine Yankee Atomic Power Co.</u>, 926 F.Supp. 211 (D. Me. 1996) (holding that the plaintiff's fraud, IIED and battery claims were not preempted by the Price-Anderson Act because the federal safety regulations had no bearing on the defendant's liability for intentional acts); <u>Joseph v. Sweet</u>, 125 F.Supp.2d 573 (D. Mass. 2000) (holding that the procedure of screening of complaints by tribunal to decrease frivolous claims was not inconsistent with the Price-Anderson Act).

Here, Plaintiffs' argument does nothing more than recite the well accepted rule that state law serves as the basis for a public liability action as long as it is consistent with the the Price-Anderson Act. <u>O'Conner</u>, 13 F.3d at 1100. However, Plaintiffs fail to present any analysis showing how imposing a duty upon GE under Illinois law to comply with Part 20 dose limits is *consistent* with the Price-Anderson Act. Moreover, Plaintiffs argument completely ignores that Part 20 regulations impose this duty on the Licensee alone.

In <u>O'Conner</u>, the Seventh Circuit held that "federal regulations must provide the sole measure of the defendants' duty in a public liability cause of action." 13 F.3d at 1105. In reaching this conclusion, the court explained that "the field of nuclear safety has been occupied by federal regulation; there is no room for state law. Consequently, 'states are preempted from imposing a non-federal duty in tort, because any state duty would infringe upon pervasive federal safety regulations in the field of nuclear safety, and thus would conflict with federal law." <u>Id.</u> (quoting <u>TMI</u>, 940 F.2d at 859). The Court further explained that:

> Congress has attempted for nearly fifty years to encourage private sector involvement in the nuclear industry and at the same time has sought to protect the public. The Price–Anderson Act was enacted to promote these goals of "protect[ing] the public and ... encourag[ing] the development of the atomic

energy industry." 42 U.S.C. § 2012. Accordingly, the Price–Anderson Act limits liability and provides for indemnification, but does so against a stringent regulatory background. The federal nuclear safety regulations are part of this statutory scheme. Imposing a standard of care other than the federal regulations would disturb the carefully crafted balance between private involvement and safety that Congress has achieved. Thus, the application of something other than the federal safety regulations as a standard of care is inconsistent with the Price–Anderson scheme and consequently cannot be applied in a public liability action.

Id. at 1105.

As discussed *supra*, Part 20 regulations, including Part 20 dose limits, apply only to the Licensees of nuclear power plants. However, GE was not the Licensee of the power plants where Mr. Lawson worked and received occupational doses of radiation. Thus, following the court's reasoning in O'Conner, imposing a duty upon GE under Illinois law to comply with Part 20 dose limits would be inconsistent with the pervasive federal safety regulations that are part of the Price-Anderson statutory scheme. See O'Conner, 13 F.3d at 1105 ("[T]he Amendments Act provides that state law shall be applied only as long as it is consistent with the Price Anderson Act" (citing 42 U.S.C. § 2014(hh)). Therefore, to the extent that Illinois law would impose a duty upon GE in this case to comply with Part 20 dose limits, it is preempted. Id. Accordingly, the Court concludes that Plaintiffs are unable to establish a critical element of their public liability action—that GE owed Mr. Lawson a duty of care—since Part 20 dose limits provide the sole duty of care in this case.

### III. CONCLUSION

The sole duty of care in this case is provided by the federal permissible dose limits in 10 C.F.R. § 20.101 (1986) and applies only to the Licensees of nuclear power plants. GE was never the Licensee the power plants where Mr. Lawson worked and received occupational doses of radiation. Therefore, GE owed no duty to Mr. Lawson to comply with the dose limits set forth in section 20.101. Further, imposing a duty upon GE under Illinois law to comply with section

17

20.101 would be inconsistent with the federal nuclear safety regulations that are part of the Price-Anderson statutory scheme. Thus, to the extent that Illinois law would impose a duty upon GE in this case to comply with section 20.101, it is preempted. Accordingly, GE's motion for summary judgment is granted.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATE: July 12, 2018